**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANDREW JOSEPH, ISAMU FAIRBANKS,
IAN DOUGHTY and MARTIN CRAIG,

        Plaintiffs,

    v.

LISA CARNES, GREGORY PEASE,
RICK JACOBS and CHRIS HAMILTON,

        Defendants.

Case No. 13-cv-2279

JURY TRIAL DEMANDED

## COMPLAINT

NOW COME Plaintiffs Andrew Joseph ("Joseph"), Isamu Fairbanks ("Fairbanks"), Ian Doughty ("Doughty"), and Martin Craig ("Craig") (collectively "Plaintiffs"), by and through their below identified attorneys, and for their Complaint against Defendants Lisa Carnes ("Carnes"), Chris Hamilton ("Hamilton"), Gregory Pease ("Pease"), and Rick Jacobs ("Jacobs") (collectively "Defendants"), state as follows:

## NATURE OF THE ACTION

1.    This is an action for damages and injunctive relief based on Defendants' clandestine acquisition, review, and use of Plaintiffs' private and attorney-client privileged e-mails without Plaintiffs' consent, authorization, or knowledge in blatant violation of the Stored Communications Act (18 U.S.C. § 2701).

2.    On November 5, 2012, Defendants Carnes and Hamilton first performed an unauthorized search and review of Plaintiffs' e-mails. Defendant Carnes then proceeded to continually and systematically search, access, and review Plaintiffs' e-mails; including attorney-client privileged e-mails shared between Plaintiffs Joseph, Fairbanks, and their personal counsel; performing **966** searches over the course of the first month alone and **2,488** total searches of

which Plaintiffs are currently aware.

3.     Defendants Carnes and Hamilton unlawfully searched and accessed the e-mails as part of a conspiratorial scheme with Defendants Pease and Jacobs.  Defendants' actions were intentional, methodical, and persistent, and were committed for the express purpose of: (i) wrongfully seizing control of the management of a profitable limited liability company; (ii) using their ill-gotten gains to draft, prepare, and file a complaint against Plaintiffs in state court; (iii) gaining an unwarranted and illegal advantage in that litigation; and (iv) impermissibly viewing and using confidential and protected information, such as attorney-client privileged communications and attorney work product.

4.     By way of this Complaint, Plaintiffs seek: (a) a preliminary and permanent injunction enjoining Defendants from searching, accessing, and reviewing Plaintiffs' electronic communications; (b) a preliminary and permanent injunction enjoining Defendants from deleting evidence of the unauthorized searches; (c) a preliminary and permanent injunction enjoining Defendants from using the illegally obtained electronic communications, or any information contained therein, for any purpose in the future; (d) compensatory and punitive damages for Defendants' intentional misconduct; and (e) an award of Plaintiffs' attorneys' fees and costs incurred in bringing and pursuing this action.

## PARTIES

5.     Plaintiff Joseph is a member of and holds a 20% interest in Fairbanks, LLC ("FLLC").

6.     Plaintiff Fairbanks is a member of and holds a 20% interest in FLLC.

7.     Plaintiff Doughty is employed by FLLC as a Senior Manager.

8.     Plaintiff Craig is the CEO and Founder of HBG Health Ventures, an equity advisory firm.  Craig is a business advisor for Joseph and Fairbanks.

9.      Defendant Carnes is a member of and holds a 20% interest in FLLC.  Carnes is a resident of Illinois.

10.      Defendant Pease is a member of and holds a 20% interest in FLLC.  Pease is a resident of Illinois.

11.      Defendant Jacobs is a member of and holds a 20% interest in FLLC.  Jacobs is a resident of Virginia.

12.      Defendant Hamilton is employed by FLLC as the Manager of Information Services.  Hamilton is a resident of Illinois.

## JURISDICTION AND VENUE

13.      This Court has original jurisdiction over Count I of this Complaint pursuant to 28 U.S.C. § 1331 because Count I is based on violations of the Stored Communications Act (18 U.S.C. § 2701), and therefore, arises under a law of the United States.

14.      This Court has supplemental jurisdiction over Count II of this Complaint pursuant to 28 U.S.C. § 1367(a) because Count II is so related to Count I as to form part of the same case or controversy under Article III of the United States Constitution.

15.      This Court has personal jurisdiction over Defendants Carnes, Pease, and Hamilton because each is a resident of the State of Illinois.  Exercising personal jurisdiction over Defendants Carnes, Pease, and Hamilton fully complies with all due process requirements.

16.      This Court has personal jurisdiction over Defendant Jacobs because he is a member of FLLC, an Illinois limited liability company, and does substantial and continuous business in Illinois.  Jacobs has also purposefully availed himself of the benefits and protections of the laws of Illinois by filing a lawsuit in Illinois state court on February 6, 2013.  Exercising personal jurisdiction over Defendant Jacobs fully complies with all due process requirements.

17.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois.

<b><u>FACTUAL ALLEGATIONS</u></b>

**A.**      **<u>FLLC, Its Operating Agreement, and Its Policies.</u>**

18.      FLLC is an Illinois limited liability company with its principal place of business located at 500 North Michigan Avenue, Suite 300, Chicago, Illinois 60611.  FLLC was formed in March 2004.

19.      FLLC has five members: Plaintiffs Joseph and Fairbanks, and Defendants Carnes, Pease, and Jacobs.  Each member holds a 20% membership interest in FLLC.

20.      Each of the members of FLLC has executed and is a party to FLLC's Operating Agreement dated February 3, 2009.   FLLC's Operating Agreement is attached hereto as **Exhibit A**.

21.      As set forth in Article 14.1 of the Operating Agreement, the management of FLLC is to be exclusively by its members.  (Ex. A, § 14.1).

22.      Article 14.1 of the Operating Agreement further provides that "[a]ll Company decisions shall be decided by Members holding a Majority Interest . . . ."  *Id.*

23.      Majority Interest is defined as the "number of Membership Interests which, taken together, exceeds sixty-seven (67%) of the aggregate of all such Membership Interests then outstanding . . . ."  *Id.* at § 3.15.

24.      Because each of the five members holds a 20% membership interest in FLLC, the Operating Agreement requires that company decisions and actions be approved by four of the five members.

25.     FLLC does not have any internal policies in place, written or otherwise, authorizing the search and review of e-mails of its members or employees absent approval by four of five members of FLLC as required by Article 14.1 of the Operating Agreement.

26.     Nor does FLLC maintain or provide to its employees or members an employee handbook or any written policies giving notice to its employees or members that their e-mails may be accessed or reviewed without their knowledge or authorization.

27.     Since the inception of FLLC in March 2004, the members have never discussed, voted on, adopted, or approved any internal policy authorizing the access and review of a member's or employee's e-mails.

28.     At all times herein relevant, not one of the Plaintiffs was informed by FLLC or its members that their e-mails were to be searched, accessed, or reviewed.  Nor did any of the Plaintiffs authorize or consent to, either expressly or impliedly, the search, access, or review of their e-mails.

**B.      FLLC's E-Mail System.**

29.     FLLC's e-mail system is hosted by 123together.com ("123").

30.     123 is a provider of Microsoft Exchange Server hosting.  123's data center and servers are located in Waltham, Massachusetts.

31.     E-mails sent to or from FLLC's members and employees are archived and stored on 123's servers.

32.     In order to access, search, and review the FLLC e-mails stored on 123's servers, an FLLC e-mail administrator is required to login through 123's website.

33.     Once the FLLC e-mail administrator is logged on through 123's website, the administrator must access the "Archiving Settings" and change the setting to "Search Admin PLUS."

34.    Once the "Archiving Settings" are changed, the individual is then provided a separate URL and password which allows them to access, search, and review all archived e-mails for all FLLC e-mail accounts, including all e-mails sent to and from those accounts.

35.    FLLC members and employees do not have any access to each other's e-mails, absent completing the process detailed above of: (i) logging into 123's website as an FLLC e-mail administrator; (ii) changing the "Archiving Settings" for the individual; (iii) receiving a separate URL and password; and (iv) using the separate URL and password to access the archived e-mails.

36.    Once logged into the database containing the archived e-mails, the individual is then capable of performing detailed searches of all archived e-mails sent to or from all FLLC members and employees, accessing the e-mails, and reviewing the e-mails.

**C.    Discord Arises Between The Members Of FLLC.**

37.    As early as 2010, the relationships between the members of FLLC began to deteriorate due to diverging views on the future direction of FLLC and the handling of an unprofitable contract FLLC has with the State of Texas (the "Texas Contract").

38.    The members' disagreement regarding the unprofitable Texas Contract finally came to a head in September 2012 and the members of FLLC began discussing a possible solution for the discord: an assignment of the Texas Contract to a third party.

39.    Shortly thereafter, on October 17, 2012, Plaintiffs Fairbanks and Joseph met with Defendants Carnes, Pease, and Jacobs and made a proposal that the Texas Contract be assigned to a new entity which they would create.

40.    Although Defendants Carnes, Pease, and Jacobs previously expressed a unanimous desire to assign the Texas Contract, they did not respond well to the proposal made

by Plaintiffs Fairbanks and Joseph, and the relationship among the members continued to deteriorate.

41.     Despite the further deterioration of the relationships between the members of FLLC, Defendants Carnes, Pease, and Jacobs continued to feign interest in the solution of an assignment of the unprofitable Texas Contract.  From October 2012 to January 2013, Defendants Carnes, Pease, and Jacobs repeatedly requested additional information, details, and proposals from Plaintiffs Joseph and Fairbanks regarding an assignment of the Texas Contract.

42.     Acting under the mistaken belief that Defendants Carnes, Pease, and Jacobs were working in good faith to reach a business solution for FLLC's business problem, Plaintiffs Joseph and Fairbanks continued to prepare and provide the requested details, information, and proposals throughout the course of October 2012 to January 2013.

**D.     Defendants' Conspiratorial Scheme To Illegally Access Plaintiffs' E-Mails.**

43.     Unbeknownst to Plaintiffs Fairbanks and Joseph, Defendants Carnes, Pease, and Jacobs had no intention of entertaining an assignment of the unprofitable work to a separate and yet to be established company despite their repeated requests for more information about the proposals.

44.     Defendants Carnes, Pease, and Jacobs were instead secretly plotting and preparing to file a lawsuit against Plaintiffs in the Circuit Court of Cook County and engaging in a conspiratorial scheme to search, access, monitor and review Plaintiffs' e-mails without their knowledge, authorization, or consent for use in the state court lawsuit.

45.     On November 5, 2012 – a time in the midst of Plaintiffs Joseph and Fairbanks preparing and submitting business proposals at the request of Defendants Carnes, Pease, and Jacobs – Defendants Carnes and Hamilton for the first time logged onto, searched, and accessed Plaintiffs' archived e-mails.

46.     On information and belief, Defendant Hamilton assisted Defendant Carnes in changing her status on 123's website in the "Archiving Settings" to allow her access to Plaintiffs' archived e-mails.  On information and belief, Defendant Hamilton further tutored and advised Defendant Carnes on how to search, access, download, and PDF the archived e-mails.

47.     Having improperly acquired access to Plaintiffs' archived e-mails, Defendant Carnes began a systematic and exhaustive search of the archived e-mails, establishing an extensive system of queries designed to specifically target the e-mail communications of Plaintiffs Joseph, Fairbanks, Doughty, and Craig.

48.     On at least one occasion, Defendant Hamilton also searched archived emails and/or created search queries designed to target the e-mail communications of Plaintiffs Joseph, Fairbanks, Doughty, and Craig.

49.     During the first month alone, from November 5, 2012 to December 5, 2012, Defendant Carnes performed **966** searches of Plaintiffs' archived e-mails.  (A log of Defendant Carnes' user activity is attached hereto as **Exhibit B**).

50.     From November 5, 2012 to February 5, 2013, the date on which Defendant Carnes' illegal activity was discovered and she deleted the evidence of her searches, Defendant Carnes performed a total of **2,488** searches.  *Id.*

51.     During this same time period, Defendant Carnes also converted the e-mails she located through the illegal searches into a PDF format for additional review and use **1,260** times. *Id.*

52.     The search criteria used by Defendant Carnes was specifically designed to identify and target the e-mail communications of Plaintiffs Joseph, Fairbanks, Doughty, and Craig.  For instance, the search terms used by Defendant Carnes include: "MARTIN CRAIG,"

"DOUGHTY" and "ANDREW & ISAMU."[1]  (A screenshot of Defendant Carnes' saved search criteria is attached hereto as **Exhibit C**).  The "user" identified for these searches is "lcarnes@fairbanksllc.com."[2]  *Id.*

53.     Defendant Carnes also included searches of a personal nature, targeting e-mail communications with personal friends and acquaintances.

54.     At all times herein relevant, Defendants Carnes, Pease, and Jacobs were aware that Plaintiffs Joseph and Fairbanks had retained personal attorneys to advise them in preparing and presenting the requested business proposals to Defendants Carnes, Pease, and Jacobs. Indeed, it was at the suggestion and insistence of Defendants Carnes, Pease, and Jacobs, as well as FLLC's former corporate counsel, Michael Keeley of the law firm of Hunton & Williams, that Plaintiffs Joseph and Fairbanks retained personal counsel to assist with the business proposals and negotiations.

55.     Based on the timing of the searches and the search terms used, Defendant Carnes intentionally and surreptitiously accessed and viewed attorney-client privileged e-mails between Plaintiffs Joseph and Fairbanks and their then personal attorneys, as well as e-mails containing attorney work product.

**E.      Defendant Carnes Attempts To Destroy The Evidence Of The Illegal Conduct.**

56.     The figure of **2,488** searches only encompasses the unauthorized searches from November 5, 2012 to February 5, 2013.  On February 5, 2013, Defendant Carnes deleted all previous searches and began actively concealing her future searches.

---

[1] Andrew and Isamu are the first names of Plaintiffs Joseph and Fairbanks.

[2] Defendant Carnes' e-mail address is lcarnes@fairbanksllc.com.

57.     On February 5, 2013, Plaintiff Fairbanks learned of Defendant Carnes' illegal search, access, and review of Plaintiffs' archived e-mails.  Plaintiff Fairbanks immediately generated the user activity log attached hereto as Exhibit B and took screen shots of Defendant Carnes' saved search terms attached hereto as Exhibit C.

58.     On that same date, Defendant Carnes learned that Plaintiff Fairbanks had discovered her clandestine and illegal searches of Plaintiffs' e-mails.

59.     Upon learning that she had been caught, Defendant Carnes immediately deleted the evidence of the searches she and Defendant Hamilton conducted, including her extensive system of queries designed to specifically target the e-mail communications of Plaintiffs Joseph, Fairbanks, Doughty, and Craig.  On information and belief, Defendant Hamilton assisted Defendant Carnes in deleting the evidence of the unauthorized searches.

60.     Defendant Carnes intentionally deleted the information with knowledge that she and Defendants Pease and Jacobs were filing a lawsuit in state court against Plaintiffs the very next day.  Notwithstanding Defendant Carnes' knowledge of the relevance of the information to the state court lawsuit, she deleted information in a bad faith attempt to conceal the nefarious conduct and destroy relevant evidence.  Defendant Carnes' conduct constitutes improper and intentional spoliation of relevant evidence.

## F.     Defendants' Improper Use Of Their Ill-Gotten Gains.

61.     The very day after Plaintiff Fairbanks learned of the illegal searches, on February 6, 2013, Defendants Carnes, Pease, and Jacobs filed a state court lawsuit against Plaintiffs.

62.     The state court lawsuit is premised on (i) the good faith business proposals submitted by Plaintiffs Joseph and Fairbanks at the repeated requests of Defendants Carnes, Pease, and Jacobs; and (ii) information and e-mails illegally acquired by Defendants Carnes and

Hamilton through their searches of Plaintiffs' archived e-mail, including information extracted from attorney-client privileged e-mails between Plaintiffs Joseph and Fairbanks and their then personal attorneys.

**G.    Defendant Pease Confirms FLLC's Policy.**

63.    On February 7, 2013, Plaintiff Fairbanks contacted 123 to inform it of the unauthorized searches and to request a complete list of the search terms used to access and examine Plaintiffs' e-mails.

64.    Plaintiff Fairbanks' request was subsequently forwarded to Defendant Pease.

65.    Underscoring and confirming FLLC's lack of any policy expressly or impliedly authorizing the search and review of FLLC e-mails, on February 19, 2013, Defendant Pease instructed 123 **not to provide** Plaintiff Fairbanks the requested information, claiming that Plaintiff Fairbanks **lacked authority** to individually acquire information regarding the illegal searches.[3]

**THE STORED COMMUNICATIONS ACT (18 U.S.C. § 2701)**

66.    The Stored Communications Act makes it a criminal offense when any person "intentionally accesses without authorization a facility which an electronic communication service is provided; or intentionally exceeds an authorization to access that facility; and thereby obtains . . . . access to a wire or electronic communication while it is in electronic storage in such system."  18 U.S.C. § 2701(a).

---

[3] Defendant Pease advanced this position despite the fact that Plaintiff Fairbanks was only seeking information regarding the illegal searches and was not seeking to access, search, or review Defendants' electronic communications.

67.     The maximum criminal punishment for the first offense is a fine, imprisonment for not more than 5 years, or both.  18 U.S.C. § 2701(b).  For a second offense, the maximum criminal punishment is a fine, imprisonment for not more than 10 years, or both.

68.     The Stored Communications Act further creates a civil cause of action for any person aggrieved by any violation of the Act.  18 U.S.C. § 2707(a).

69.     The Stored Communications Act expressly provides the appropriate relief in a civil cause of action brought under the Act, including:

    (a)     Preliminary and other equitable or declaratory relief;

    (b)     Actual damages suffered by the plaintiff;

    (c)     Punitive damages; and

    (d)     Reasonable attorneys' fees and litigation costs.

**DEFENDANTS' UNLAWFUL CONDUCT**

**COUNT I.**
**VIOLATION OF THE STORED COMMUNICATIONS ACT**
**DEFENDANTS CARNES AND HAMILTON**

70.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 69.

71.     Defendants Carnes and Hamilton intentionally accessed a facility through which an electronic communication is provided.

72.     To wit, Defendants Carnes and Hamilton intentionally accessed 123's e-mail servers where Plaintiffs' e-mails are archived and stored, and accessed numerous electronic communications sent and received by Plaintiffs, including attorney-client privileged communications between Plaintiffs Joseph and Fairbanks and their then personal attorneys, without Plaintiffs' knowledge, authorization, or consent.

73.     Defendants Carnes and Hamilton did not have the consent or authorization of

FLLC or Plaintiffs to access, obtain, or review the stored electronic communications. A Majority Interest of the members of FLLC did not grant Defendants Carnes and Hamilton the authorization to access, obtain, or review Plaintiffs' electronic communications. Nor do any FLLC policies authorize, either expressly or implied, Defendants Carnes and Hamilton to access, obtain, or review Plaintiffs' electronic communications.

74. Likewise, Plaintiffs had no knowledge that their electronic communications were being searched, accessed, or reviewed, and did not consent, either expressly or impliedly, to such conduct.

75. As a result of the unauthorized conduct, Defendants Carnes and Hamilton obtained access to Plaintiffs' electronic communications which were in electronic storage.

76. The unauthorized conduct of Defendants Carnes and Hamilton caused and continues to cause actual harm to Plaintiffs. Plaintiffs' electronic communications accessed and obtained by Defendants Carnes and Hamilton were used by Defendants Carnes, Pease, and Jacobs to: (i) wrongfully seize control, or attempt to seize control, of the management of FLLC; (ii) prepare and draft a state court complaint against the Plaintiffs; (iii) gain an unwarranted and illegal advantage in the state court lawsuit; and (iv) impermissibly view and use confidential and protected information, such as attorney-client privileged communications and attorney work product.

77. Plaintiffs have suffered and will continue to suffer irreparable harm absent immediate injunctive relief as a result of Defendants Carnes' and Hamilton's unauthorized access and review of Plaintiffs' electronic communications, including communications protected by the attorney-client privilege and the attorney work product doctrine; Defendants' continued retention, review, and use of such electronic communications; and Defendant Carnes' intentional

- 13 -

concealment and destruction of evidence showing the unauthorized conduct.

**COUNT II.**
**CIVIL CONSPIRACY**
**ALL DEFENDANTS**

78.　Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 77.

79.　Defendants Carnes, Pease, Jacobs and Hamilton combined and conspired to cause the access and review of Plaintiffs' electronic communications without Plaintiffs' knowledge, authorization, or consent in direct violation of the Stored Communications Act.

80.　The conspiratorial scheme was devised and advanced by Defendants for the unlawful purpose of allowing Defendants Carnes, Pease, and Jacobs to clandestinely acquire and review Plaintiffs' e-mails without Plaintiffs' knowledge, authorization, or consent in direct violation of the Stored Communications Act.

81.　Defendants Carnes, Pease, and Jacobs then used the fruit of the conspiratorial scheme to: (i) wrongfully seize control, or attempt to seize control, of the management of FLLC; (ii) draft, prepare, and file a complaint against Plaintiffs in state court; (iii) gain an unwarranted and illegal advantage in that litigation; and (iv) impermissibly view and use confidential and protected information, such as attorney-client privileged communications and attorney work product.

82.　Defendants Carnes and Hamilton committed overt unlawful acts in furtherance of Defendants' conspiratorial scheme, and committed overt lawful acts to achieve an unlawful purpose in furtherance of the conspiratorial scheme.

83.　To wit, Defendants Carnes and Hamilton intentionally accessed 123's e-mail servers where FLLC e-mails are archived and stored, and accessed numerous electronic communications sent and received by Plaintiffs, including attorney-client privileged

- 14 -

communications between Plaintiffs Joseph and Fairbanks and their then personal attorneys, without Plaintiffs' knowledge, authorization, or consent.

84.     Defendant Carnes additionally converted the illegally acquired e-mails into PDF format for review and future use by all parties to the conspiratorial scheme.

85.     On information and belief, Defendant Hamilton assisted Defendant Carnes in changing the "Archiving Settings" on 123's website to allow her access to Plaintiffs' archived e-mails.  On information and belief, Defendant Hamilton further tutored and advised Defendant Carnes on how to search, access, download, and PDF the archived e-mails.  On information and belief, Defendant Hamilton independently created search queries and later assisted Defendant Carnes in deleting the evidence of the unauthorized searches.

86.     Upon Plaintiffs' discovery of the unauthorized conduct, Defendant Carnes intentionally concealed and deleted her extensive system of queries designed to specifically target the archived e-mail communications of Plaintiffs Joseph, Fairbanks, Doughty, and Craig.

87.     Plaintiffs have suffered and will continue to suffer irreparable harm absent immediate injunctive relief as a result of Defendants' conspiratorial scheme to gain unauthorized access to Plaintiffs' electronic communications, including communications protected by the attorney-client privilege and the attorney work product doctrine; Defendants' continued retention, review, and use of such electronic communications; and Defendant Carnes' intentional concealment and destruction of evidence showing the unauthorized conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ANDREW JOSEPH, ISAMU FAIRBANKS, IAN DOUGHTY and MARTIN CRAIG, pray that this Court enter a judgment as follows:

1.     A preliminary and permanent injunction to enjoin Defendants from: (a) searching, accessing, and reviewing Plaintiffs' electronic communications; (b) deleting or destroying

evidence of the unauthorized conduct; (c) using the illegally obtained e-mails, or any information contained therein, for any purpose in the future; and (d) copying or distributing the illegally obtained electronic communications;

2.    Requiring Defendants to immediately turn-over all illegally obtained electronic communications and all logs evidencing the illegal searches and the search terms used;

3.    Requiring, at Defendants' expense, forensic analysis of Defendants' computers to determine the scope of the unauthorized access of Plaintiffs' electronic communications and to ensure that all such electronic communications have been turned over to Plaintiffs;

4.    Awarding Plaintiffs compensatory damages in amount to be determined at trial;

5.    Awarding Plaintiffs statutory damages in amount to be determined at trial;

6.    Awarding Plaintiffs punitive damages in an amount to be determined at trial;

7.    Awarding Plaintiffs their reasonable costs and attorneys' fees; and

8.    Granting Plaintiffs any additional relief this Court deems just and appropriate.

**<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury on all issues.

Date:  March 26, 2013                                           Respectfully submitted,

Dean A. Dickie, Esq.                                            ANDREW JOSEPH, ISAMU FAIRBANKS, IAN
Kathleen E. Koppenhoefer, Esq.                                  DOUGHTY and MARTIN CRAIG
Ryan C. Williams, Esq.
MILLER, CANFIELD, PADDOCK                                        By:   /s/Dean A. Dickie
    AND STONE, P.L.C.                                                      One of Plaintiffs' Attorneys
225 West Washington Street, Suite 2600
Chicago, IL  60606
Telephone:  (312) 460-4200
Facsimile:  (312) 460-4288
Email: dickie@millercanfield.com
koppenhoefer@millercanfield.com
williamsr@millercanfield.com