UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW JOSEPH, ISAMU FAIRBANKS, IAN DOUGHTY, and MARTIN CRAIG, Plaintiffs, v. LISA CARNES, GREGORY PEASE, RICK JACOBS, and CHRIS HAMILTON, Defendants. | Case No. 13-cv-2279 Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Andrew Joseph, Isamu Fairbanks, Ian Doughty, and Martin Craig, filed suited against Defendants, Lisa Carnes, Gregory Pease, Rick Jacobs, and Chris Hamilton, on March 26, 2013, alleging two counts: a civil cause of action under the Stored Wire and Electronic Communications Privacy Act ("SCA"), 18 U.S.C. § 2701; and civil conspiracy. Defendants move to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted. The motion has been fully briefed. For the reasons provided below, Defendants' Motion is denied.

### BACKGROUND

The following facts are based on the Complaint and attached exhibits and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."

*Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). Jurisdiction arises under 28 U.S.C. § 1331, as Count I of the Complaint alleges violations of the SCA, 18 U.S.C. § 2701, and supplemental jurisdiction exists over Count II of the Complaint, pursuant to 28 U.S.C. § 1367(a). (Compl. ¶¶ 13-14.) Fairbanks, LLC ("FLLC") was formed in 2004 as an Illinois limited liability company with its principal place of business in Chicago. (*Id.* ¶ 18.) FLLC has five members, who each own a 20 percent membership interest in FLLC: Plaintiffs Joseph and Fairbanks and Defendants Carnes, Pease, and Jacobs. (*Id.* ¶ 19.) Plaintiff Doughty is a Senior Manager with FLLC, and Plaintiff Craig is a business advisor to Joseph and Fairbanks. (*Id.* ¶¶ 7-8.) Defendant Hamilton is the Manager of Information Services. (*Id.* ¶ 12.)

The five members of FLLC executed the FLLC Operating Agreement, dated February 3, 2009. (*Id.* ¶ 20.) The Operating Agreement provides that "[t]he management of the Company shall be exclusively by Members. All Company decisions shall be decided by Members holding a Majority Interest . . . ." (*Id.* ¶¶ 21-22.) A majority interest is defined as the number of membership interests, which, taken together, exceeds 67 percent of the aggregate of all interests outstanding. (*Id.* ¶ 23.) With each member holding a 20 percent interest in FLLC, this requires company decisions to be approved by 4 out of the 5 members. (*Id.* ¶ 24.)

FLLC does not have any policies in place, written or otherwise, authorizing the search and review of the emails of its members or employees, absent approval by four of the five members of FLLC. (*Id.* ¶ 25.) FLLC does not inform its employees that its emails may be accessed or reviewed without their knowledge or authorization. (*Id.* ¶ 26.) Plaintiffs did not authorize or consent to the search, access, or review of their emails. (*Id.* ¶ 28.)

FLLC's email system is hosted by 123together.com ("123"), which has a data center and servers in Waltham, Massachusetts. (*Id.* ¶¶ 29-30.) FLLC's emails are archived and stored on

123's servers, and in order to access these stored emails, an FLLC email administrator is required to log into 123's website. (*Id.* ¶¶ 31-32.) Once logged on, the administrator must access the "Archiving Settings" and change the setting to "Search Admin PLUS." (*Id.* ¶ 33.) After this change is made, the administrator receives a separate Uniform Resource Locator ("URL") and password, which allows her to access, search, and review archived emails from all FLLC accounts. (*Id.* ¶ 34.) FLLC members and employees did not have access to FLLC emails without completing this process. (*Id.* ¶ 35.)

In 2010, the relationship between the FLLC members began to deteriorate, in part because of the members' disagreement over the handling of an unprofitable contract (the "Texas Contract"). (*Id.* ¶ 37.) The members discussed a possible solution to this problem: an assignment of the Texas Contract to a third party. (*Id.* ¶ 38.) The members met and proposed the Texas Contract would be assigned to a new entity created by the members on October 17, 2012. (*Id.* ¶ 39.) Plaintiffs claim Defendant members feigned an interest in the assignment of the Texas Contract, and Plaintiffs believed the Defendant members were working in good faith to resolve the issue of the assignment. (*Id.* ¶¶ 41-42.)

Defendants engaged in a conspiratorial scheme to search, access, monitor, and review Plaintiffs' emails without their knowledge, authorization, or consent for use in the state court lawsuit. (*Id.* ¶ 44.) On November 5, 2012, Carnes and Hamilton logged on and searched Plaintiffs' archived emails. (*Id.* ¶ 45.) Carnes began a systematic, exhaustive search of Plaintiffs' email communications; and, from November 5, 2012, through December 5, 2012, Carnes performed 966 searches of Plaintiffs' emails. (*Id.* ¶ 49.) From November 5, 2012, to February 5, 2013, when the searches came to light, Carnes had performed a total of 2,488 searches of Plaintiffs' emails and converted many of the emails she found into .pdf documents

3

for further review. (*Id.* ¶¶ 49-51.) Thereafter, Carnes deleted her previous searches and actively concealed her future searches. (*Id.* ¶ 56.) Hamilton, on at least one occasion, also searched Plaintiffs' emails. (*Id.* ¶ 48.)

Carnes specifically searched for *Plaintiffs'* email communications and performed searches of a personal nature. (*Id.* ¶¶ 52-53.) Carnes intentionally and surreptitiously accessed and viewed attorney-client privileged emails between Plaintiffs Joseph and Fairbanks and their personal attorneys. (*Id.* ¶ 55.) After Fairbanks discovered these email searches, Defendants Carnes, Pease, and Jacobs filed suit against Plaintiffs in state court. (*Id.* ¶ 61.) The state court suit involves business proposals Defendants received from Plaintiffs Joseph and Fairbanks and information and emails acquired by Defendants through their search of Plaintiffs' emails. (*Id.* ¶ 62.)

Fairbanks contacted 123 to inform it of the unauthorized searches and to request more information about these unauthorized searches; 123 forwarded Fairbanks' request to Pease, who instructed 123 not to provide the information to Fairbanks, claiming Fairbanks lacked the authority to acquire that information. (*Id.* ¶¶ 63-64.)

Relying on these facts, Plaintiffs allege Defendants Carnes and Hamilton violated the SCA by intentionally accessing the 123 email servers for Plaintiffs' emails, without authorization or consent. (*Id.* ¶¶ 72-73.) Plaintiffs further allege all Defendants committed civil conspiracy by conspiring to cause the access and review of Plaintiffs' emails without Plaintiffs' knowledge, authorization, or consent. (*Id.* ¶ 79.)

Defendants move to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted.

**LEGAL STANDARD**

To properly assert a claim in a complaint, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the relief sought." Fed. R. Civ. P. 8. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*Iqbal*) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*)). While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal*, 129 S. Ct. at 1949.

A defendant may file a motion to dismiss a claim under Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted. To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

However, "[w]here the well-settled pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950. For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556). At issue in a 12(b)(6) motion is "not whether a plaintiff will ultimately prevail" but whether the plaintiff is entitled to present evidence to

support the claims alleged. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (internal quotation and citation omitted).

## ANALYSIS

### *SCA Claim*

The SCA provides a civil cause of action when an individual or entity "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility" and "thereby obtains . . . a wire or electronic communication while it is in storage in such system . . . ." 18 U.S.C. § 2701(a).

Defendants move to dismiss the SCA claim alleged against Carnes and Hamilton, arguing Plaintiffs are unable to state a claim that the accessing of Plaintiffs' emails was unauthorized. Rather, Defendants contend, Carnes and Hamilton simply accessed the emails by the procedure prescribed by FLLC, by logging on the 123 website as an FLLC email administrator.

Congress enacted the SCA "to protect privacy interests in personal and proprietary information from the mounting threat of computer hackers 'deliberately gaining access to, and sometimes tampering with, electronic or wire communications' by means of electronic trespass." *Devine v. Kapasi*, 729 F. Supp. 2d 1024, 1026 (N.D. Ill. 2010) (citing S.Rep. No. 99-541, at 3 (1986)). Here, Defendants posit, there was no trespass, as Carnes and Hamilton simply went through the steps required to access the emails archived with 123.

Defendants rely in part on the opinion of another district court, the Eastern District of Missouri. In *Lasco Foods, Inc. v. Hall and Shaw Sales, Marketing, & Consulting, LLC*, the court dismissed a claim under the SCA, finding that an employee's alleged misappropriation of information was not considered "unauthorized" under the SCA. *Lasco Foods, Inc. v. Hall and*

*Shaw Sales, Marketing, & Consulting, LLC*, 600 F. Supp. 2d 1045, 1049-1050 (E.D. Mo. 2009). In dismissing the SCA count of the complaint, the court there found the plaintiff "broadly, and without any factual support, allege[d] 'Defendants . . . fraudulently or intentionally exceeded their authorization to access [Plaintiff]'s protected computers.'" *Id.* at 1050.

The *Lasco* case, however, is readily distinguishable from the facts of this case. Here, Plaintiffs specifically allege that no policy exists permitting an individual to search and review emails of the FLLC's members or employees, "absent approval by four of five members of FLLC as required by Article 14.1 of the Operating Agreement." (Compl. ¶ 25.) Section 14.1 of the Operating Agreement provides that "[a]ll Company decisions shall be decided by Members holding a Majority Interest . . . ." (Compl. Ex. A ¶ 14.1.) Company decision is not a defined term in the Operating Agreement. This case is distinguishable from the *Lasco* case because Plaintiffs specifically allege Hamilton and Carnes accessed emails without authorization and further support their claim by explaining how decisions are made under the FLLC's Operating Agreement.

At this stage in the proceedings, all inferences are drawn in Plaintiffs' favor, and it is plausible that the decision to search member and employee emails is a Company decision and that, therefore, the searches by Hamilton and Carnes were unauthorized under the Operating Agreement.[1] Plaintiffs have sufficiently pleaded enough facts to state a claim for relief under the SCA. *Iqbal*, 129 S. Ct. at 1949.

---

[1] Defendants further assert the SCA claim should be dismissed under a theory of unclean hands. However, the defense of unclean hands is an affirmative defense, and "[a]ffirmative defenses do not justify dismissal under Rule 12(b)(6) . . . ." *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). Accordingly, this argument is also rejected.

*Civil Conspiracy Claim*

Defendants argue the civil conspiracy claim should be dismissed because the SCA claim must fail and that, therefore, the conspiracy claim should be dismissed as no independent cause of action remains underlying the conspiracy claim. (Defs.' Mot. at 13-14.) However, for the reasons provided above, Plaintiffs' SCA claim survives; and, therefore, Defendants cannot defeat the civil conspiracy claim on that basis.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is denied.

Date: May 14, 2013

JOHN W. DARRAH
United States District Court Judge