UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW JOSEPH, </br>ISAMU FAIRBANKS, </br>IAN DOUGHTY, and MARTIN CRAIG, </br></br>Plaintiffs, </br></br>v. </br></br>LISA CARNES, </br>GREGORY PEASE, </br>RICK JACOBS, and </br>CHRIS HAMILTON, </br></br>Defendants. | ) </br>) </br>) </br>) </br>) </br>) Case No. 13-cv-2279 </br>) </br>) Judge John W. Darrah </br>) </br>) </br>) </br>) </br>) </br>) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Andrew Joseph, Isamu Fairbanks, Ian Doughty, and Martin Craig filed suit against Defendants Lisa Carnes, Gregory Pease, Rick Jacobs, and Chris Hamilton on March 26, 2013, alleging two counts: a civil cause of action under the Stored Wire and Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2701 and civil conspiracy. The following day, Plaintiffs moved for a preliminary injunction, seeking to enjoin Defendants from: (1) searching, accessing, and reviewing Plaintiffs' electronic communications; (2) deleting or destroying evidence of the purportedly unauthorized conduct; (3) using the obtained emails, or any information contained therein, for any purpose in the future; and (4) copying or distributing the obtained electronic communications. Defendants oppose Plaintiffs' Motion for Preliminary Injunction and filed a Motion to Strike and Dismiss this motion for preliminary injunction on August 27, 2013. For the reasons provided below, Defendants' Motion to Strike and Dismiss Plaintiffs' Motion for Preliminary Injunction is granted.

**BACKGROUND**

The following facts, taken from the Complaint and supporting materials, were previously provided in a Memorandum Opinion and Order issued on May 14, 2013, denying Defendants' Motion to Dismiss the Complaint. Fairbanks, LLC ("FLLC") was formed in 2004 as an Illinois limited liability company with its principal place of business in Chicago. FLLC has five members, who each own a 20-percent membership interest in FLLC: Plaintiffs Joseph and Fairbanks and Defendants Carnes, Pease, and Jacobs. Plaintiff Doughty is a Senior Manager with FLLC, and Plaintiff Craig is a business advisor to Joseph and Fairbanks. Defendant Hamilton is the Manager of Information Services.

The five members of FLLC executed the FLLC Operating Agreement, dated February 3, 2009. The Operating Agreement provides that "[t]he management of the Company shall be exclusively by Members. All Company decisions shall be decided by Members holding a Majority Interest . . . ." A majority interest is defined as the number of membership interests, which, taken together, exceeds 67 percent of the aggregate of all interests outstanding. With each member holding a 20 percent interest in FLLC, this requires company decisions to be approved by 4 out of the 5 members.

According to the Complaint, FLLC does not have any policies in place, written or otherwise, authorizing the search and review of the emails of its members or employees, absent approval by four of the five members of FLLC. The Complaint further alleges FLLC does not inform its employees that its emails may be accessed or reviewed without their knowledge or authorization and asserts that Plaintiffs did not authorize or consent to the search, access, or review of their emails.

FLLC's email system is hosted by 123together.com ("123"), which has a data center and servers in Waltham, Massachusetts. FLLC's emails are archived and stored on 123's servers, and in order to access these stored emails, an FLLC email administrator is required to log in to 123's website. Once logged on, the administrator must access the "Archiving Settings" and change the setting to "Search Admin PLUS." After this change is made, the administrator receives a separate Uniform Resource Locator ("URL") and password, which allows her to access, search, and review archived emails from all FLLC accounts. Plaintiffs assert FLLC members and employees did not have access to FLLC emails without completing this process.

In 2010, the relationship between the FLLC members began to deteriorate, in part because of the members' disagreement over the handling of an unprofitable contract (the "Texas Contract"). The members discussed a possible solution to this problem: an assignment of the Texas Contract to a third party. The members met and proposed the Texas Contract would be assigned to a new entity created by the members on October 17, 2012. Plaintiffs claim Defendant members feigned an interest in the assignment of the Texas Contract, while Plaintiffs believed the Defendant members were working in good faith to resolve the issue of the assignment.

According to the Complaint, Defendants engaged in a conspiratorial scheme to search, access, monitor, and review Plaintiffs' emails without their knowledge, authorization, or consent for use in the state court lawsuit. On November 5, 2012, Carnes and Hamilton logged on and searched Plaintiffs' archived emails. Carnes began a systematic, exhaustive search of Plaintiffs' email communications; and, from November 5, 2012, through December 5, 2012, Carnes performed 966 searches of Plaintiffs' emails. From November 5, 2012, to February 5, 2013, when the searches came to light, Carnes had performed a total of 2,488 searches of Plaintiffs'

emails and converted many of the emails she found into .pdf documents for further review. Thereafter, Carnes deleted her previous searches and actively concealed her future searches. Hamilton, on at least one occasion, also searched Plaintiffs' emails.

The Complaint further asserts Carnes specifically searched for *Plaintiffs'* email communications and performed searches of a personal nature, and that she sought to surreptitiously access and view attorney-client privileged emails between Plaintiffs Joseph and Fairbanks and their personal attorneys. After Fairbanks discovered these email searches, Defendants Carnes, Pease, and Jacobs filed suit against Plaintiffs in state court; this suit is in part based on information and emails acquired by Carnes and Hamilton through their email searches. The state court suit involves business proposals Defendants received from Plaintiffs Joseph and Fairbanks and information and emails acquired by Defendants through their search of Plaintiffs' emails.

Fairbanks contacted 123 to inform it of the unauthorized searches and to request more information about these unauthorized searches; 123 forwarded Fairbanks' request to Pease, who instructed 123 not to provide the information to Fairbanks, claiming Fairbanks lacked the authority to acquire that information.

Based on these facts alleged, Plaintiffs contend they have suffered and will continue to suffer irreparable harm by Defendants' conduct, absent the entry of a preliminary injunction. Defendants argue that this Court lacks the authority and jurisdiction to enjoin the state court from considering evidence in the proceedings pending before it and, therefore, this Court lacks the authority to grant Plaintiffs the injunctive relief they seek.

**LEGAL STANDARD**

The threshold requirements for obtaining a preliminary injunction are: (1) a demonstration that the movant's case has "some likelihood of success on the merits" and (2) that it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011)). If those conditions are met, "the district court 'must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.'" *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). The district court is also obligated to consider the public interest in granting or denying a request for a preliminary injunction and then, after weighing these competing factors, determine the most appropriate relief. *Stuller*, 695 F.3d at 678.

**ANALYSIS**

*Likelihood of Success on the Merits*

To demonstrate some chance of success on the merits, Plaintiffs must demonstrate a "better than negligible chance of succeeding on the merits." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997) (citation and quotations omitted). "This is an admittedly low requirement and is simply a threshold question." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008) (citation omitted).

Plaintiffs' Complaint propounds two causes of action: a violation of the ECPA and civil conspiracy. The ECPA provides a civil cause of action when an individual or entity

5

"intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility" and "thereby obtains . . . a wire or electronic communication while it is in storage in such system . . . ." 18 U.S.C. § 2701(a). A civil conspiracy claim in Illinois requires "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 938-39 (7th Cir. 2012) (quoting *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)).

As previously discussed in the May 14 Memorandum Opinion and Order, it is possible that the decision to search member and employee emails is a Company decision and that, therefore, the searches by Hamilton and Carnes were unauthorized under the FLLC Operating Agreement. If those email searches were found to be intentional and unauthorized, Plaintiffs have some likelihood of succeeding on their civil claim under the ECPA. Similarly, Plaintiffs have some chance of success with respect to their claim of civil conspiracy, as it is possible Plaintiffs can demonstrate Defendants conspired together to have the Plaintiffs' emails searched without authorization, and possibly in violation of the ECPA. Accordingly, Plaintiffs have demonstrated some likelihood of success on the merits of their claims.

*No Adequate Remedy at Law and Risk of Irreparable Harm*

Plaintiffs contend that no adequate remedy at law exists, because Defendants' potentially improper accessing of emails gives them an "unwarranted advantage in the state court litigation." (Pls.' Mem. in Support of Preliminary Inj. Mot. at 13.) In particular, Plaintiffs contend Defendants have access to attorney-client privileged communications. (*Id.*) Plaintiffs assert that

6

improper disclosure of, and access to, privileged materials by Defendants amounts to irreparable harm.

Contrarily, Defendants suffer a risk of irreparable harm if they have some legitimate right to access the emails, did not violate the ECPA, or did not conspire to do so, and were prevented from having access to the communications going forward.

*Public Interest and Jurisdiction*

Plaintiffs' motion for preliminary injunction ignores the issue of the public interest and, in particular, whether this Court has the jurisdiction to limit evidence in a case pending before a state court. Essentially, Plaintiffs seek, by way of a preliminary injunction, to assert attorney-client privilege and prevent email communications from being used in Defendants' suit filed against Plaintiffs in state court. Whether or not the emails were obtained in violation of the ECPA is an issue separate from whether or not the emails obtained are privileged, or should otherwise be barred from evidence in the state court proceeding. The latter issue is a question wholly under the jurisdiction of the relevant state court.

Plaintiffs argue in their motion that they seek to enjoin Defendants' actions; however, to ask a federal court, in effect, to make an evidentiary ruling that would impact a state court proceeding is essentially a request to enjoin the state court from considering the issue of admissibility. Such actions are prohibited by the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971). The rule from that case "is designed to permit state courts to try state cases free from interference by federal courts." *FreeEats.com, Inc. v. Indiana*, 505 F.3d 590, 595 (7th Cir. 2007) (citation omitted). A federal court is prevented from interfering in a state court proceeding involving important state interests. *Kemp v. Chicago Housing Authority*, Case No. 10 C 3347, 2010 WL 2927417, at *5 (N.D. Ill. July 21, 2010). Accordingly, "in consideration of

'the principles of equity, comity, and federalism that restrain a federal court, while recognizing the respect due the courts of a sovereign state,'" Plaintiffs' request for a preliminary injunction is denied. *A.B. ex rel. Kehoe v. Housing Authority of South Bend*, 683 F.3d 844, 845 (7th Cir. 2012) (citation and quotations omitted). This court has no authority, nor any valid basis, to interfere with what amounts to the exclusion of certain evidence in a state court proceeding by preventing the state court judge from determining its admissibility pursuant to the rules of evidence in effect there.

After considering each of the factors pertinent to a preliminary injunction analysis, it is apparent that the entry of a preliminary injunction in favor of Plaintiffs would not serve to further the public interest, particularly with respect to the principles of federalism and comity. Therefore, Plaintiffs' Motion for a Preliminary Injunction is denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' Motion [53] is granted, and Plaintiffs' Motion for a Preliminary Injunction [7] is denied.

Date:   September 19, 2013  

                                          JOHN W. DARRAH
                                  United States District Court Judge